UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Thomas Lawrence Hoskins,<br><br>                          Plaintiff,<br><br>                    -against-<br><br>Tammara Lawhead, Donaldson Lawhead,<br>Tawnda J. Bickford, Brandon V. Lawhead,<br><br>                          Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>Jury Trial Requested |

## INTRODUCTION

1.        This Complaint arises out of the sudden and premature death of Michael Blair

Lawhead ("Blair").  On the morning of March 14, 2018, Blair suffered a massive heart attack.

For the seven years that proceeded that fateful morning, Blair and Plaintiff Thomas Hoskins

("Plaintiff" or "Tom") were in a live-in committed, long-term romantic relationship.  Despite

Plaintiff's efforts to revive him by administrating CPR, Blair died.

2.        What followed was a highly organized conspiracy by and among the Defendants

to convert as much cash, personal property, documents and possessions from the two properties

that Tom and Blair shared and lived in for over seven years:  an apartment in New York City and

a house in Hudson, New York.

3.        As set forth more fully below, the Defendants employed multiple illegal, tortious,

and unethical means to enter Plaintiff's apartment and wrongfully convert Plaintiff's personal

property, including but not limited to:  (i) multiple and knowing trespasses into the New York

residence; (ii) breaking into a safe located in Plaintiff's apartment and removing all cash and

documents, including what is believed to be Blair's Last Will and Testament; (iii) creating

fraudulent documents and presenting these to the Police Department in Hudson, New York to give the misimpression that they had a legal right to the Hudson house; and (iv) attempting to obtain illegal entrance to the New York residence by threatening and intimidating the building's management company and Plaintiff's agents.  Plaintiff has demanded that Defendants return the property that they converted, but they have steadfastly refused.

4.     At all relevant times, Defendants have acted with intent, malice and depraved indifference to Plaintiff's extreme suffering in the wake of Blair's death.  Indeed, they strategically utilized Plaintiff's grief and shock to help effect their misdeeds.  This lawsuit seeks the return of Plaintiff's property and additional compensation as allowed by law, including compensatory and punitive damages.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

6.     This Court has personal jurisdiction over all Defendants under NY CPLR § 302 because all of the Defendants committed a tortious act within New York State and/or committed tortious acts without the state causing injury to persons or property within the State.

7.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.  Venue is also proper under 28 U.S.C. §1391(b)(2) because a substantial part of property that is the subject of the action is situated in the Southern District of New York.

## PARTIES

### I.   PLAINTIFFS

8.      At all relevant times, Thomas Lawrence Hoskins resides in, and is the sole occupant of, the apartment in New York County known as 255 West 23rd Street, Apt. 2CE, New York, New York 10011 (the "apartment" or "New York residence").  Plaintiff also enjoys a lawful tenancy in a house in Columbia County, New York, known as 312 Union St., Hudson, New York, 12534 (the "Hudson house").  Plaintiff and Blair were in a committed relationship for the past seven years and, up until the time of his death, lived in both properties together as a couple.

### II.   DEFENDANTS

9.      At all relevant times, Brandon Vaughn Lawhead ("Brandon") is a citizen of the State of Minnesota.  He is a lawyer licensed to practice law in the State of Minnesota who maintains an office at 506 West Oakland Avenue, Austin Minnesota, 55912.  He is the brother of the decedent, Blair Lawhead.

10.     At all relevant times, Donaldson Lawhead ("Don") is a citizen of the State of Minnesota.  He is a lawyer licensed to practice law in the State of Minnesota who maintains an office at 506 West Oakland Avenue, Austin Minnesota, 55912.  He is the father of the decedent, Blair Lawhead.

11.     At all relevant times, Tammara Lawhead ("Tammy") is a citizen of the State of Minnesota.  She is the mother of the decedent, Blair Lawhead.

12.     At all relevant times, Tawnda Jeanne Bickford ("Tawnda") is a citizen of the State of Minnesota.  She is the sister of the decedent Blair Lawhead.

## FACTUAL ALLEGATIONS

13.     On the morning of March 14, 2018, Blair suffered a massive heart attack.  Despite Plaintiff's efforts to revive him through CPR, Blair died.

14.     What followed was a highly organized conspiracy by the Defendants to defraud and deprive Plaintiff of his personal property and his lawful possession and tenancy in the New York residence and the Hudson house.

15.     Within hours of being told of Blair's death, Defendants, acting in concert and with intent, deployed Brandon and Tawnda to go to New York City with the express purpose of converting as much cash and personal property as possible without any legal authority to do so, and without "Letters" from a court of competent jurisdiction.  The two appeared, uninvited, at the New York residence from the State of Minnesota, waiting in the lobby of the building until Plaintiff returned.  They accosted Plaintiff in the lobby and demanded that they be allowed to stay in the apartment.  Still in shock from Blair's death—which occurred only hours earlier—and having no reason to believe that Brandon (a lawyer) or Tawnda would behave unlawfully or unethically, Plaintiff allowed the Defendants into the apartment.

16.     It soon became apparent that this was not the case.  Rather, Brandon and Tawnda—acting at the express direction of Tammy who was directing all of the activity by telephone—engaged in misconduct wherein Brandon, Tawnda, and several known and unknown persons removed cash, property, documents and possessions from the premises, much of which was the sole property of Plaintiff.

17.     Upon information and belief, Blair's Last Will and Testament was among the documents that Defendants wrongfully removed from the premises.

18.     On March 16, 2018, Defendants locked Plaintiff out of his own apartment and invited unknown people to the premises.  After Plaintiff finally regained entry into his apartment,

4

he ordered an unknown woman who was let into the apartment by the Defendants to leave.  At Defendants' instruction, she refused to do so.

19.     On the morning of March 17, 2018, Plaintiff discovered that Defendants had ransacked Plaintiff's closet and rifled through his personal papers and belongings, which Plaintiff specifically instructed Defendants not to do.  Plaintiff also discovered that valuable property had been removed from the apartment in his absence, much of which was his sole property.

20.     At that point, Plaintiff unequivocally told Brandon to leave the apartment. Brandon refused and called Tawnda, who, in turn, called the police.  The police arrived and confirmed that Brandon, Tawnda and others they had allowed to illegally enter the residence had no right to be in there and should leave immediately.  Nevertheless, not only did Brandon stay in the apartment without permission, he had his teenage children come to the apartment, uninvited, to assist Defendants in in their intentional, unauthorized, unlawful, and unethical activities.

21.     On the evening of March 17, 2018, Plaintiff called the police to report that Brandon and his children refused to leave the apartment and had removed highly valuable property from the premises.  The police arrived and again informed Brandon that he had no right to be in the apartment.  When he refused to leave, they escorted him out.

22.     During the time that Defendants were in the apartment, Defendants admit that they cut open and destroyed a safe, which was located in a closet of the residence, and removed all cash and documents from the safe.  Blair's Last Will and Testament is believed to have been in the safe.

23.     Among the other valuable items removed by Defendants and members of his family over the course of several days include, but are not limited to, multiple valuable violins,

cash, papers, documents, and other possessions, much of which was Plaintiff's sole property. They also sole an expensive violin that was the sole property of a neighbor who had entrusted it to Blair to get it repaired.  Defendants acted with intent and without any legal authority or Letters Testamentary or Letters of Administration from any court of competent jurisdiction.

24.     The removal of the property is clearly visible on surveillance videotape, which also shows that Brandon and Tawnda brought multiple people to the New York residence, without authorization, and without Plaintiff's knowledge, consent or permission.

25.     In addition to the above, Plaintiff also enjoys a legal tenancy to the premises located at 312 Union St., Hudson, New York.  Defendants, acting in concert and without Letters from any court of competent jurisdiction, sought to have the Hudson County's Sheriff's office change the locks and alarm code on the property with the specific purpose of denying Plaintiff entry to his own residence and access to his own property.  The Hudson County Sherriff's office told Defendants unequivocally that they had no right to enter the Hudson house.  Undeterred, Defendants, upon information and belief, forged documents using the letterhead from Don Lawhead's law practice and faxed it to a junior officer at the Hudson County Sherriff's office, asserting that this document showed that Defendants had a right to gain entry into the Hudson house.  Not knowing that the Lawhead letter was a forgery (and was, in any event, legally insufficient to vest Defendants with any authority to enter the premises, let alone prevent Plaintiff from doing so), the officer worked with Defendants to arrange for a locksmith to change the locks and the alarm company to change the security code.  Plaintiff is now unable to enter the premises or use any of his multiple possessions within the Hudson house.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Trespass (against all Defendants)

26.     Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

27.     Plaintiff is currently the sole lawful tenant of the New York residence.

28.     Defendants, acting with intent or recklessness, repeatedly refused to leave Plaintiff's New York residence, even after Plaintiff and the police told them that they had no legal right to be there.

29.     Defendants, acting with intent or recklessness, invited known and unknown persons into the apartment without permission, to assist Defendants in in their intentional, unauthorized, unlawful, and unethical activities.

30.     Defendants, acting with intent or recklessness, exceeded any authority that they were given to enter the property by engaging in illegal and unethical acts, including, but limited to:  (1) locking Plaintiff out of his apartment; (2) causing unauthorized intrusions upon Plaintiff's property by multiple third parties; (3) admittedly breaking into a safe on the property and removing its contents; (4) ransacked Plaintiff's closet and rifled through his personal papers and belongings, which Plaintiff specifically instructed Defendants not to do; and (5) removing cash and person property from the apartment.

31.     Defendants also committed trespass through fraud and deceit to mislead agents of the Hudson County Police Department to change the locks and alarm code of the Hudson house, with the express purpose of denying Plaintiff access to his home to which he enjoys a legal tenancy.

32.     Defendants' conduct has caused Plaintiff to sustain substantial monetary and non-monetary damages greatly exceeding $75,000.00.

33.     Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia injunctive relief, restitution, disgorgement of profits, compensatory and punitive damages, and all damages allowed by law to be paid by the Defendants, attorney fees and costs, and pre-and post-judgment interest.  Punitive damages are also appropriate because Defendants acted with actual malice to harm Plaintiff and in wanton, willful or reckless disregard of Plaintiff's rights.

## SECOND CLAIM FOR RELIEF

### Trespass to Chattel/Conversion (against all Defendants)

34.     Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

35.     Plaintiff has a possessory right or interest in all of the property in the New York residence and the Hudson house.

36.     Defendants, individually and through their agents, have wrongfully and intentionally interfered with Plaintiff's possessory interest in the property in the New York residence by: (1) breaking into a safe on the property and removing its contents, including substantial amounts of cash and legal papers; and (2) removing property from the apartment, including multiple valuable violins, papers, documents, and other possessions, much of which was Plaintiff's sole property.

37.     Plaintiff has demanded the return of this property but Defendants have refused.

38.     Defendants, individually and through their agents, have wrongfully and intentionally interfered with Plaintiff's possessory interest in the property in the Hudson home by using trickery, fraud, and deceit to deny Plaintiff access to his property, including clothing, art work, papers, dishes, antiques and other valuables.

39.     Plaintiff has demanded that he be given access to this property but Defendants have refused.

40.     Defendants conduct has caused Plaintiff to sustain substantial monetary and non-monetary damages.

41.     Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia injunctive relief, restitution, disgorgement of profits, compensatory and punitive damages, and all damages allowed by law to be paid by the Defendants, attorney fees and costs, and pre-and post-judgment interest.  Punitive damages are also appropriate because Defendants acted with actual malice to harm Plaintiff and in wanton, willful or reckless disregard of Plaintiff's rights.

### THIRD CLAIM FOR RELIEF

#### Civil Conspiracy/Aiding and Abetting (against all Defendants)

42.     Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

43.     Defendants engaged in a civil conspiracy in their unlawful trespass and conversion of property.  Defendants' conspiracy and acts in furtherance thereof are alleged in detail in this Complaint, including, without limitation, in Plaintiff's Count for trespass and conversion.  Such allegations are specifically incorporated herein.

44.     Defendants acted with a common understanding and design to commit unlawful acts, as alleged herein, and acted purposely, without a reasonable or lawful excuse, which directly caused the injuries alleged herein.

45.     Defendants acted with malice, purposely, intentionally, unlawfully, and without a reasonable of lawful excuse.

46.     Defendants' conduct in furtherance of the conspiracy described herein was not mere parallel conduct because each Defendant acted in concert to and against the Plaintiff's interest.

47.     Defendants' conspiracy, and Defendants' intentional, reckless and negligent actions and omissions in furtherance thereof, caused the direct and foreseeable losses alleged herein.

48.     Defendants' misconduct does not concern a discrete event.  Rather, it involves an ongoing conspiracy to steal, deprive, convert, and defraud Plaintiff out of his rightful real and personal property interest.  Indeed, the conspiracy is still active and continues to deprive Plaintiff of his rightful real and personal property interest.

49.     Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia injunctive relief, restitution, disgorgement of profits, compensatory and punitive damages, and all damages allowed by law to be paid by the Defendants, attorney fees and costs, and pre-and post-judgment interest.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment (against all Defendants)

50.     Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

51.     As an expected and intended result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from their trespass into the apartment and conversion of cash, personal property, documents and possessions from the premises, much of which was Plaintiff's sole property.

52.     Defendants were aware of these obvious benefits, and their retention of the benefit is unjust.

53.     Defendants have unjustly retained benefits to the detriment of Plaintiff, and Defendants' retention of such benefits violates the fundamental principles of justice, equity, and good conscience.

54.     Plaintiff seeks an order compelling Defendants to disgorge all unjust enrichment to Plaintiff; and awarding such other, further, and different relief as this Honorable Court may deem just.

## PRAYER FOR RELIEF

55.     Plaintiff respectfully requests the following relief that this Court enter an order of judgment granting all relief requested in this complaint, and/or allowed at law or in equity, including:

a.     Immediate return of all money and property illegally taken from Plaintiff's premises;

b.     Actual damages;

c.     Punitive damages;

e.     Exemplary damages;

f.     Disgorgement of unjust enrichment

g.     Forfeiture, disgorgement, restitution and/or divestiture of proceeds and assets;

h.     Attorneys' fees;

i.     Costs and expenses of suit;

j.     Pre- and post-judgment interest; and

k.     Such other and further relief as this Court deems appropriate.

DATED:  New York, New York
          July 24, 2018

The Law Office of Peter Panero

By: _____
    Peter Panaro
      liesq@aol.com

4216 Merrick Road
Masspaequa, New York  11758

Attorneys for Thomas Hoskins